**FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver for Jefferson Bank & Trust, Plaintiff,**

v.

**REFCO GROUP, LTD.; Refco, Inc.; Refco Capital Corporation; Refco Securities, Inc.; and Kimberly Goodman, Defendants.**

No. Civ.A. 93–K–85.

United States District Court,
D. Colorado.

April 28, 1999.

Craig B. Shaffer, S. Kirk Ingebretsen, Dufford & Brown, P.C., Denver, CO, for plaintiff.

Jack Weinberg, Graubard, Mollen & Miller, New York City, Edward W. Stern, Massey, Semenoff & Stern, P.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER OF CLARIFICATION

KANE, Senior District Judge.

On March 19, 1999, FDIC filed a Motion for Leave to File Materials under Seal and a Request for Clarification. FDIC seeks clarification as to whether the February 17, 1999 Order ("Order") precludes it from investigating and possibly referring to the Department of Justice, suspected violations by James L. Sexton of government-

wide disclosure statutes and corresponding criminal provisions. On March 22, 1999, the Refco Defendants (Refco) filed a Preliminary Objection and Unopposed Notice of Intent to Respond to FDIC's Request for Clarification and Motion to File Under Seal, asserting both filings were improper efforts to reargue the clear Order protecting Sexton from further intimidation or threats by FDIC and noting that FDIC had failed to comply with D.C.Colo.LR 7.1A. On March 23, 1999, FDIC filed a Superseding Motion for Leave to File, *Nunc Pro Tunc*, Materials under Seal and Certification of Compliance with D.C.Colo. LR. 7.1A. On April 8, 1999, Refco's (a) Response to FDIC's Request for Clarification and (b) Request for Criminal Referral were filed. Refco also filed a proposed order for my signature allowing the materials to be filed under seal pending further court order. I signed that order on April 9, 1999. On April 22, 1999, FDIC Filed its Reply to "The Refco Entities' (a) Response to FDIC's Request for Clarification and (b) Request for Criminal Referral," which was permitted to be filed under seal. On April 27, 1999, Refco filed a Reply in Support of Request for Criminal Referral and requested leave to file the reply under seal. I grant FDIC's requests for permission to file its initial pleadings under seal, clarify the Order, grant Refco's motion to file its reply in support of the request for criminal referral under seal, and deny Refco's request for a criminal referral.

## I. *Background.*

On February 9, 1999, Refco filed a motion, seeking an order enabling its banking practice expert witness, James L. Sexton, to testify. Sexton had recently been employed by the FDIC as its Director of Supervision. Refco alleged FDIC sought to prevent him from testifying for or further assisting Refco in this case.[1]

In a further motion, filed on February 17, 1999, Refco requested an expedited hearing to enable Sexton to testify, asserting it had been informed that the FDIC had advised Sexton that it would terminate his services and subject him to criminal prosecution unless by February 18, 1999, he terminated his expert witness relationship with Refco. Refco asserted this was the case, even though Sexton's testimony and this litigation concern the conduct of Jefferson Bank and Trust and do not relate to the performance of his official duties with FDIC. I held an expedited hearing on February 17, 1999.

In a letter dated February 17, 1999 (faxed to me in chambers), William L. Gardner, representing Sexton, wrote to Refco's counsel stating Refco had engaged Bracewell & Patterson for the purpose of having Sexton serve as a consultant and banking expert in this litigation and that,

---

1. According to Refco's counsel, Sexton informed him that (unidentified officials of) FDIC had threatened Sexton with criminal prosecution under 18 U.S.C. § 205, a provision of the Ethics in Government Act, which provides:

   (a) Whoever, being an officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States, other than in the proper discharge of his official duties—
   (1) acts as agent or attorney for prosecuting any claim against the United States, or receives any gratuity, or any share of or interest in any such claim, in consideration of assistance in the prosecution of such claim; or
   (2) acts as agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest;
   shall be subject to [criminal] penalties....

   Refco argued FDIC's reliance on this statute was misplaced as Sexton was neither an attorney nor an agent of Refco. *See Kirk v. Raymark Indus., Inc.* 61 F.3d 147, 164 (3d Cir.1995) (holding an expert witness is not an agent as such witness is not subject to the control of the party by whom he has been retained). The statute was further inapplicable, according to Refco, in that it was intended to prevent federal employees from using private government information to assist persons who have claims against the United States.

regardless of the position FDIC may take with regard to his testimony, he was no longer employed by Bracewell & Peterson and was not willing to testify, even if FDIC were to grant him permission to do so.

At the expedited hearing, FDIC asserted the problem was of Sexton's own making in that he had not disclosed his involvement in this litigation in the process of applying for employment with FDIC nor in documentation he completed thereafter. FDIC supported its ethics officer's finding that Sexton's acting as an expert witness for Refco had at minimum the appearance of a conflict of interest. It cited regulations adopted by the Office of Government Ethics barring current federal employees from serving as expert witnesses "other than on behalf of the United States" in "any proceedings ... in which the United States is a party or has a direct and substantial interest, unless the employee's participation is authorized by the agency." 5 C.F.R. § 2635.805(a) (1998).

I ruled the government regulations cited did not prevail over the orderly processes of this court in a pending matter such as this and FDIC and its ethics expert were under an obligation to apply to the court, rather than to take independent action as they did.[2] I appointed Sexton as a court expert under Federal Rules of Evidence 614,[3] stating I would require him to testify at trial in accordance with the report he had previously submitted. I stated further:

> I will enjoin any activity detrimental to his employment based upon his complying with this court's orders to testify; and should he fail to testify when called to the stand, we'll worry about that at the time.

(Transcript Hearing Feb. 17, 1999, Mot. Enable Defs.' Expert Witness to Testify, at 27–28.)

I gave Refco until April 15, 1999 to appoint a new expert witness should it so wish. Further, I admonished: "Mr. Sexton will be here whether he likes it or not; and the FDIC, need I say, had better take no action against him for complying with the orders of this court." (*Id.* at 28.) FDIC's counsel, Craig Shaffer, then clarified: "I can assure you that the FDIC will not take any action because Mr.—they have been very scrupulously making sure that any individual involved in this litigation has no contact with Mr. Sexton." (*Id.* at 28–29.) I responded: "That's fine. You can build Chinese walls or do whatever you want to; but if he's fired or threatened with criminal sanctions because he is appearing in this court as a court-appointed expert, as I just appointed him, then all hell is going to break loose." (*Id.* at 29.) Mr. Shaffer rejoined: "I understand, your Honor. We intend to comply." (*Id.*)

**2.** The Tenth Circuit has emphasized that the court, rather than the agency, is the final authority to determine the applicability of such regulations to prevent testimony by agency employees. *See Sperandeo & NLRB v. Milk Drivers & Dairy Employees,* 334 F.2d 381, 384 (10th Cir.1964) (denying NLRB's motion to quash a subpoena for documents or testimony on behalf of any party to any litigation, without the consent of the NLRB); *see also Dean v. Veterans Administration,* 151 F.R.D. 83, 84–86 (N.D.Ohio 1993) (citing *Sperandeo* in declining to apply an agency regulation restricting VA employees from serving as expert witnesses).

**3.** I appointed Sexton as a court expert under Rule 614, which allows the court to call witnesses on its own motion or at the suggestion of a party. I deliberately chose that rule rather than Rule 706. The latter allows the court to appoint its own expert, but states: "An expert witness shall not be appointed by the court unless the witness consents to act." My order stated the costs of the court-appointed expert would be determined following the trial as to which side or whether both sides would bear the costs. Rule 706 pertinently states, "the [expert's] compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." Fed.R.Evid. 706(b). Rule 614 makes no provision for payment of a witness called by the court and so I am guided by the provisions of Rule 706.

## II. *FDIC's Motion for Leave to File Materials under Seal.*

FDIC requests me to exercise my inherent supervisory authority over its records and files to permit the FDIC to file its request for clarification and documents in support thereof under seal. The basis for sealing, according to FDIC, is that the request for clarification discusses confidential matters developed in conjunction with a confidential FDIC investigation that is not yet complete. FDIC wants the pleading filed under seal to (1) preserve the confidentiality of the FDIC's investigation, and (2) avoid embarrassment or undue prejudice to the subject of the investigation. I granted permission to file the response and reply briefs under seal and grant FDIC's motion for leave to file the motion under seal.[4] This order, however, is the order of a public court and will not be sealed.

## III. *FDIC's Request for Clarification and Refco's Request for Criminal Referral.*

Refco maintains its request for clarification is not an attempt to reargue the Order but is intended to inform the court of a matter that has arisen with respect to a witness in the case and to obtain guidance in this regard. Specifically, FDIC wants

---

**4.** I also grant Refco's request to file its reply brief in respect of the motion for referral under seal.

**5.** (a) Referral of cases. The head of each agency, each Secretary concerned, or the Director of the Office of Government Ethics, as appropriate, shall refer to the Attorney General the name of any individual when there is reasonable cause to believe that such individual has willfully failed to file a public report or information required on such report, or has willfully falsified any information (public or confidential) required to be reported under this part.
(b) Civil action. The Attorney General may bring a civil action in any appropriate United States district court against any individual who knowingly and willfully falsifies or who knowingly and willfully fails to file or report any information required by filers of public reports under subpart B of this part. The court in which the action is brought

---

to confirm the Order does not preclude it "from investigating, and possibly referring to the Department of Justice, suspected violations of several government-wide disclosure statutes applicable to senior executive branch officials, and corresponding criminal provisions." (FDIC's Request Clarification at 1.) The potential violations arise from Sexton's alleged failure to disclose his pre-existing retainer agreement with Graubard, Mollen & Miller (Refco's lead counsel in this case) before his employment with FDIC, his failure to terminate that agreement before assuming his duties at FDIC, and his failure thereafter to report his continuing obligations under the retainer agreement as required by the Ethics in Government Act, all of which, FDIC asserts, occurred more than one month before entry of the Order.

According to FDIC, its procedure in such circumstances is to investigate any failure by an FDIC employee to make a required disclosure and, if it finds "reasonable cause" to believe that the violation is "willful," refer the matter to the Attorney General of the United States. *See* 5 U.S.C.App. 4 § 104(b). FDIC footnotes that the information adduced by it also suggests a potential violation of the criminal statute. *See* 5 C.F.R. § 2634.701(a) (1998).[5] Before the Order was entered,

---

may assess against the individual a civil penalty in any amount, not to exceed $10,-000, as provided by section 104 of the Act.
(c) Criminal action. An individual may also be prosecuted under criminal statutes for supplying false information on any financial disclosure report.
(d) Administrative remedies. The President, the Vice President, the Director of the Office of Government Ethics, the Secretary concerned, the head of each agency, and the Office of Personnel Management may take appropriate personnel or other action in accordance with applicable law or regulation against any individual for failing to file public or confidential reports required by this part, for filing such reports late, or for falsifying or failing to report required information. This may include adverse action under 5 C.F.R. part 752, if applicable. 5 C.F.R. § 2634.701 (1998).

FDIC states, its Assistant Executive Secretary (Ethics) had referred the matter to its Inspector General for investigation and, immediately after the hearing, the Inspector General was informed of the order and had stayed any investigation or action on the referral regarding Mr. Sexton. FDIC interprets the intention of the Order as not excusing Sexton's "separate and distinct failures to conclude outside employment that posed a conflict of interest with his senior executive position with the government and to disclose that continuing employment obligation as required by the Ethics in Government Act." (FDIC's Request for Clarification at 5.)

Refco posits FDIC's request for clarification is a further attempt to intimidate Sexton in an effort to prevent or influence his testimony. Contrary to FDIC's assertions, Refco maintains (1) Chairwoman Donna A. Tanoue of the FDIC knew of Sexton's role as a retained expert witness for Refco, (Refco's Resp. Request for Clarification, Aff. Scott Hershman, Ex. A ¶ 4); (2) before employing Sexton, FDIC officials knew about his expert opinion report concluding that Jefferson Bank & Trust ("JBT") caused its own loss and FDIC's counsel had deposed Sexton about his report for four days; (3) by letter dated December 21, 1998, (id., Ex. B), Sexton notified Scott Hershman, Refco's counsel, effective the end of that year he would be taking up the position of FDIC's Director of Supervision and could provide no further services in this case; (4) by letter dated January 7, 1999, (id., Ex. C), Craig B. Shaffer, counsel for FDIC, informed Refco's counsel: "It is also my understanding that last month Mr. Sexton made you aware of his impending change of employment," indicating FDIC knew Sexton had informed Refco, before he started his job at FDIC, that he could no longer serve as its expert witness because he was about to be employed by FDIC; and (5) from Sexton's perspective he had terminated his relationship with Refco before joining FDIC and before submitting his Financial Disclosure Form (SF 278) on January 15, 1999, leaving nothing to disclose on that form regarding this litigation.

Refco additionally seeks an order making a criminal referral of FDIC to the United States Department of Justice because, it asserts, FDIC, in violation of criminal statutes precluding witness tampering, e.g., 18 U.S.C. §§ 1503, 1512, continues in its efforts to affect the outcome of this case "by corruptly seeking to influence and prevent Mr. Sexton's testimony through use of intimidation and threats, and by engaging in misleading conduct (including falsely accusing Mr. Sexton of a crime and threatening to prosecute Mr. Sexton under criminal statutes that FDIC knew did not apply to him)," (Refco's Resp. Request for Clarification at 3).

FDIC denies Refco's allegations and iterates its sole motivation to comply with the February 17, 1999 Order. FDIC attaches the affidavit of Chairwoman Tahoue in which she states, on November 25, 1998, she had a telephone conversation with Sexton during which she advised him that his involvement as an adverse witness in this litigation would not be a bar to his being employed by FDIC, but that he would have to do what was necessary to recuse himself or otherwise resolve the conflict. (FDIC's Reply, Tahoue Aff. ¶ 4.) According to FDIC, it was not in possession of Sexton's December 21, 1998 letter to Refco's counsel until April 8, 1999 when it was attached as an exhibit to the Refco response. In this regard, FDIC cites the affidavit of David G. Eisenstein, Senior Counsel in the Professional Liabilities Unit of FDIC's legal division, stating, on January 4, 1999, he had a telephone conversation with Sexton in which Sexton informed him of the December 21, 1998 letter and its contents, although he did not ask Sexton for a copy of the letter and did not see such copy until it was attached as an exhibit by Refco. (Id., Eisenstein Aff. ¶¶ 2–4.) According to FDIC, Refco's submissions to the court, including a written contract facially obligating Sexton to appear

as an expert witness, correspondence and sworn affidavits stating that Sexton remained obligated under the agreement, and its motion to disallow any objection by FDIC to Sexton's testifying pursuant to the contract, cast doubt on Refco's position that Sexton could have reasonably believed that his December 21 letter excused him from his obligations to Refco under the contract.

## IV. *Conclusion.*

The parties devote their arguments largely to whether James Sexton did or did not, as the case may be, disclose to FDIC his involvement or lack of involvement with Refco before or at the commencement of his employment with FDIC in January, 1999. The facts are muddied and it is not the role of this court to clarify them. The record before me, however, discloses no evidence that Sexton intentionally concealed from FDIC his involvement as Refco's expert in this litigation.

What FDIC seeks is clarification as to whether the February 17, 1999 Order precludes it from investigating and possibly referring to the Department of Justice, suspected violations by Sexton of government-wide disclosure statutes and corresponding criminal provisions. The Order is broadly phrased to preclude "any activity detrimental to [Sexton's] employment based upon his complying with this court's order to testify." (Transcript Hearing Feb. 17, 1999, Mot. Enable Defs.' Expert Witness to Testify, at 27–28.) Irrespective of whether there is a valid basis for the investigation of Sexton, the perpetuation of such investigation is related to these proceedings and would constitute an activity significantly detrimental to his employment as the court's expert. Similarly, the looming investigation amounts to a threat of criminal sanctions, caused at least indirectly by Mr. Sexton's appointment as this court's expert which came about due to FDIC's alleged threats to prosecute him due to his allegedly undisclosed involvement in this case.

FDIC expressly states it had referred the matter to its Inspector General for investigation before the Order entered. This is the very conduct the Order admonished in stating government. regulations did not prevail over the orderly processes of this court. This case is over six years old. There has been an enormous amount of discovery and the preparation by both parties has been prodigious. The time and effort spent in enabling the expert alone is sweeping. The discovery is closed and the case is ready for trial. To excise an expert witness at this juncture in obsequious deference to a bureaucratic regulation of doubtful applicability amounts to an inexcusable preference for form over substance.

FDIC and its ethics expert are under a continuing obligation to apply to the court, rather than to take independent action. For these reasons, I grant the request for clarification and state the Order does indeed preclude FDIC from investigating, and possibly referring to the Department of Justice, any suspected violations by Sexton of any of the disclosure statutes cited in the request.

Refco's request for a criminal referral of FDIC to the United States Department of Justice is based largely on the representations of Refco's counsel that unidentified officials of the FDIC made threats to Sexton relating to his continued involvement in this litigation. Based on this limited record, I think the actions referred to are more a matter of misplaced rectitude than malevolence. Therefore, I decline to refer the matter. Accordingly, I order:

FDIC'S Superseding Motion for Leave to File, *Nunc Pro Tunc,* Materials Under Seal filed on March 23, 1999 is GRANTED;

IT IS FURTHER ORDERED THAT FDIC's Request for Clarification is GRANTED: The February 17, 1999 Order precludes FDIC from investigating, and possibly referring to the Department of Justice, any suspected violations by James

Sexton of any of the disclosure statutes cited in FDIC's Request for Clarification;

IT IS FURTHER ORDERED THAT the Refco Entities' Unopposed Motion for Leave to File Reply Under Seal filed on April 27, 1999 is GRANTED;

IT IS FURTHER ORDERED THAT the Refco Entities' Request for Criminal Referral is DENIED.